We will next hear United States v. Herring, 18-4023. Good morning, Your Honors. Lawrence Herring's attorney had a constitutional duty to consult with him about his interest in appealing in this case. He had a constitutional duty to consult with Mr. Herring about his desires to appeal because he had reason to think that Mr. Herring was interested in appealing under the circumstances. Mr. Herring met with his attorney within three days of his sentencing hearing. The undisputed record shows that Mr. Herring told his attorney that he wanted to appeal his case, and that his attorney in response told him that he did not do appeals and that Mr. Herring would have to find another attorney if he wanted to appeal his case. Could I just ask for a clarification on that point about not doing appeals? That wasn't the first time that that was communicated to Mr. Herring, was it? No, Your Honor. In fact, the original attorney-client contract said that no appeal work would be covered. Yes, Your Honor. My understanding from the declaration that Mr. Kramer provided is that that is what the contract provided. All right. I haven't reviewed in all candor, Your Honor. I haven't reviewed the contract. Well, let's take that for discussion purposes. So when Mr. Herring is told by Mr. Kramer that Mr. Kramer doesn't do appeals, that he'd need to find another attorney, especially when this came after the plea, wasn't counsel effectively withdrawing at that point? And if he was, why would there be any further duty to consult? I'm sorry. I didn't understand the first part of your question. Wasn't counsel effectively withdrawing as counsel? He didn't sign up to do an appeal. He said, you've got to go find another attorney. So what triggers the duty to consult under those circumstances? Well, Your Honor, I would posit that you can't prospectively trigger a withdrawal through your contract and that the court has authority over the attorneys as an officer of the court to say, and the Sixth Amendment, Your Honor, as well, says that if this particular defendant has expressed interest in appealing, then an attorney has a duty to consult with him under the law. But did the Supreme Court ever say that in the context of an arrangement for representation that was limited to the trial work and not to an appeal? Has the Supreme Court ever addressed a situation like that? No, Your Honor. I don't believe the Supreme Court has addressed that particular situation. What I think the Supreme Court has said is that in the overwhelming majority, rather the vast majority of cases, counsel will have a duty to consult with the defendant about whether or not they want to take an appeal, Your Honor. Well, okay. But Mr. Kramer didn't stop there. He actually tried to find attorneys who do federal appellate work and gave Mr. Herring the names of those attorneys. Why isn't that sufficient to satisfy the consultation duty? Because, Your Honor, Flores-Ortega specifically says that consult in this context has a specific meaning. He has to discuss the advantages and the disadvantages of taking an appeal with his client. But if he tells his client that here's some attorneys who really know how to do appeals, why isn't that adequate for purposes of consultation? Well, Your Honor, because Mr. Herring had a personal attorney-client relationship with his counsel of choice that he had hired, Mr. Eric Kramer, at that point. So his counsel of choice, which is the bedrock of our constitutional system, as the Supreme Court has said, he personally had a duty to discharge those obligations. And the analysis is whether Mr. Trial Counsel performed in a professionally reasonable manner in giving advice about the specific advantages and disadvantages of taking appeal. Let's contrast Trial Counsel's, what he did with maybe what competent counsel would have done. They would have met with Mr. Herring. They would have told him, you have a plea waiver in this case. There may be many, if not all, of your claims that you want to raise, which would be barred by the plea agreement. And if you do file a notice of appeal and ultimately file a merits brief, then you could be in breach of the plea agreement. And that could subject you to further punishment, other conduct which may not have been prosecuted. The government may come back and try to prosecute that afterwards. But that's not what Trial Counsel did here. Instead, he gave a list of other attorneys to his client who, in the undisputed record, is that he told his attorney, I want to appeal my case. And his attorney said, you have a plea. Wait a minute. He said he was interested in appealing his case, correct? I believe the record at Appellate's Appendix 34, and this is in Mr. Herring's pro se reply or response to the government's reply, is that he told his attorney he wanted to appeal his case. And he was asking his attorney to file an appeal when he met with him. Was that statement under an affidavit? I believe that there was a sworn. That particular thing you just said, that he said, I want to appeal. Wanted to appeal his case. There was an attached sworn certificate of service. I wouldn't call it an affidavit, Your Honor, or a declaration under the formal sense of the rules. But it was attached with the following page saying that he had signed these things under penalty of perjury after the reply, I believe. So it would have been, I believe it's in the appendix at 35, I believe, Your Honor. But it would not constitute an affidavit. But I don't think, Your Honor, Mr. Herring presented plausible claims for relief in his 2255, and he was not given the opportunity. The district court found that his attorney was ineffective, right? No, Your Honor. I thought the district court said that, but it did not believe that it would have led to that Mr. Herring did not prove any prejudice by it. I believe he said that Mr. Herring's counsel did not have to consult with him in these circumstances because the trial court's instructions and admonitions about his right to appeal were so. And then in the alternative. If, even if. Yes, Your Honor. So it was an even if finding rather than a finding of ineffectiveness. Yes, Your Honor. What if trial counsel feels that he, in this instance, is incompetent to advise on an appeal because he's never done an appeal in his life, and he can't meaningfully consult because never having done an appeal, he doesn't know how that works, and then says, so here are some names, you've got plenty of time, there's the telephone, consult with them. What is unreasonable about that? A few things, Your Honor. I think what's unreasonable about it is that the whole point of talking about the advantages and disadvantages of taking an appeal is to ascertain the client's wishes, whether or not he, in fact, wants to pursue an appeal. It's not to dispose of every merits of every claim that he may be complaining about or talking to you about at that point because the whole record maybe hasn't been ordered, you won't have transcripts, those sorts of things. But filing a notice of appeal is a purely ministerial task, as the Court has reiterated in Garza v. Idaho recently. And so if counsel feels for whatever reason that they cannot represent him on appeal or they don't have the competence to do those sorts of things, and I understand the rules of professional conduct, obviously impose limitations on counsel to not take on matters which they are not qualified, then counsel has a duty to consult with other lawyers, do legal research, the types of things that lawyers do, to one, be able to give that advice, and or two, to file the notice of appeal. If his client tells him that he wants to appeal and counsel is unsure about the types of claims, the notice of appeal should be filed because your client, with his autonomy to make that type of decision, has expressed a desire in appealing. So the contract between them is void public policy or something? The contract can't be enforced? I think that particular provision of the contract, Your Honor, to the extent it comes in conflict with the Sixth Amendment duties and counsel's role in the proceedings is not enforceable, just as provisions in attorney's contracts which routinely say things like, if I'm not paid on time, I get to withdraw prior to trial, those sorts of deals. Those courts say, you can't withdraw at the last minute, we're not going to do that. As an officer of the court, I have the ability to deny a withdrawal, irregardless or irrespective, rather, of your contractual agreement with the client. When the district court said, as they always do, if you cannot afford counsel, we will appoint one for you, I assume that that preface, if you can't afford counsel, was in there. I guess that's my first question. Yes, Your Honor. So the court didn't just say, I'll appoint counsel if you want to appeal. The court said, I'll appoint counsel if you can't afford it. Is that right? Yes, Your Honor. And then does the record show whether Mr. Herring would have qualified under indigency for an appointed counsel or not? I don't believe the record reflects that one way or the other, Your Honor. But this particular counsel that he had, was that appointed or paid counsel? I believe it was paid counsel, Your Honor. So that the fact that he could pay counsel for his trial suggests that, in Mr. Herring's mind, the offer of the court to appoint counsel and then the question, why didn't he accept that, the answer to that might be if he had the money to appoint counsel for the trial, he would have had counsel money to get appellate counsel and therefore would not have felt he was eligible for that offer by the court. Is that correct? Yes, Your Honor. I think that's plausible. I think it's also important to look at the court's admonitions. The court said, you have the right to appeal in form of operas if you so desire, and Mr. Kramer can explain what that means to you. But what about notice? Let's forget appointing counsel for a minute because I think I got that too narrow. Did the court say that if you ask, we will file a notice of appeal for you, whether or not you have the ability to get free counsel? Yes, Your Honor, he did. So that was not, and he didn't accept that offer. Not at that time, Your Honor, but I think it's important to remember that after the admonitions, three days later, Mr. Herring goes and he meets with his own attorney, his trial counsel, and says, I want to appeal, and trial counsel tells him. But if he really wanted to appeal, there was an unconditional proposal by the court to file a notice of appeal for him, regardless of whether he was indigent or not. Yes, Your Honor. And so if he had really wanted to appeal, isn't the fact that he didn't take the court up on that offer powerful evidence that he didn't really intend to appeal? I think it's powerful evidence, Your Honor, that Mr. Herring had questions about everything that was said to him during the course of the proceedings. And this has not been raised in particular in our briefing, but it is in the record that Mr. Herring actually has hearing disabilities and he raised in response to the other claim in the 2255, which we didn't assert in the COA, that he didn't have his hearing aid devices in at the sentencing hearing. Mr. Herring had a criminal sentence imposed, a number of admonitions given to him by the court. Well, counsel, you haven't argued that in your brief, have you? No, Your Honor, we have not. All right. On the question of prejudice, what's your strongest evidence that Mr. Herring would have appealed had he been properly advised? The fact that he told his attorney that he wanted to appeal and his attorney told him he could not appeal in face of the plea waiver. That's it? Yes, Your Honor. I think that's our strongest point in favor of prejudice. Did he take any steps to appeal? He spoke with his attorney. He asked for documents from his attorney. He had his brother contact his attorney, ask questions immediately after the sentencing to try to ascertain his options. But the record is really scant on these things, Your Honor, and that's why, in part, we don't... Well, the record may be scant, but you do need to show, I mean, a prejudice showing needs to be made. Yes, Your Honor. All right. What showing have you made that there was prejudice assuming that there was ineffective assistance? What are we working with here? Yes, Your Honor. So the prejudice is that Mr. Herring told his attorney that he wanted to appeal his case, and we assert that his attorney performed efficiently in failing to advise him or consult with him. Well, that's the ineffective part. Yes, Your Honor. Let's get to the prejudice part. I want to know what the evidence is. Trial counsel deprived Mr. Herring of an appeal that he otherwise... No, no. What is the evidence that he would have taken steps to appeal had he been properly advised, other than telling his lawyer at the beginning that he had an interest in appealing? Well, Mr. Herring's statements in the replies and in his 2255, which are entitled to... Can you be more specific? Yes, Your Honor. His statements that he was asking his attorney to file an appeal... We've already established that. Now, what have you got besides that? Your Honor, I think those are the only points in the record. That's it? Yes, Your Honor. And under the cases, under Flores-Ortega and Garza, don't you need to make a showing beyond an interest in appealing to show prejudice? Yes, Your Honor. Beyond an interest in appealing. We do need to show beyond it. We have to show other substantial reasons. And what are they, other than that he came to counsel and said he wanted to appeal? Other than that? Well, I think telling your attorney that you want to appeal... I said other than that. You've said that now about five times. I apologize. I need something beyond that. Yes, Your Honor. Unless that's all you're relying upon, and if that is, tell me if that's all you're relying upon. Well, Your Honor, I think the facts that we've already reiterated... Then tell me what they are. The document reply? Beyond him going to his lawyer. No, Your Honor. I think the only other facts in the record are the document requests and the meeting with his attorney, and I think that's what the record presents. And I think that also... Did he contact any of the lawyers that Mr. Kramer gave to him? No, Your Honor. Mr. Kramer gives him three names, even talked to one of them, and Mr. Herring didn't even contact any of them. It's unclear from the record, and I honestly don't know. Well, do you have any evidence that he did? No, Your Honor, I do not. With that, I would like to reserve the remainder of my time. Thank you. May it please the Court. My name is Jennifer Williams for the United States. Mr. Herring pleaded guilty to one count of possession of child pornography. As part of his plea, he signed an appeal waiver, waiving his right to appeal his sentence, except under very limited circumstances. He was ultimately sentenced to a sentence of 60 months, which was 18 months below the low end of the sentencing guideline range. In his 2255, and based on the claim he presents in that, he concedes that he never explicitly asked his attorney to file an appeal notice. So his only claim is that Mr. Kramer failed to adequately consult with him about the advantages and disadvantages of an appeal. Well, counsel, at page 20 of your brief, and I'm quoting, it says that defense counsel discussed with Mr. Herring the advantages and disadvantages of taking an appeal. And I didn't really see how that actually happened. Well, he says in his 2255 that Mr. Kramer told him that because of his appeal waiver, he didn't have an appeal. And it's a fair inference from that statement that because of the appeal waiver and the sentence he received, which was below the low end of the guideline range, there were simply no grounds for an appeal. Mr. Kramer, the attorney, confirms that in his affidavit, in which he says he later contacted an appellate attorney who confirmed his understanding of the case. Well, I just don't see where the cases require a discussion about the pros and cons of taking an appeal. And I've not seen that in the record. Did Mr. Kramer actually sit down with Mr. Herring and say, here's some reasons you might want to think about an appeal, here's the reasons that maybe it doesn't make all that much sense? Where is that in the record? Well, I think that based on the specific facts of the case and what Mr. Kramer and Mr. Herring say happened at that meeting, and admittedly the facts are sparse, but the sentence he received was below the low end of the sentencing guidelines. Combined with his appeal waiver and Mr. Kramer's statement in his affidavit that he saw no grounds for an appeal, the case law says you have to consult about the advantages and disadvantages of an appeal. But that doesn't mean that there are any advantages to taking an appeal. Are you relying on Mr. Kramer's affidavit? Is that what we're talking about? Both his and the 2255 itself in which Mr. Herring says that Mr. Kramer told him that because of the appeal waiver he didn't have an appeal. How does that go to advantages and disadvantages? I don't see anything. I'm looking at the affidavit right now where Mr. Kramer is telling him he didn't have grounds. I believe it's in the last paragraph. I was never asked by Mr. Herring to file an appeal. Not the last one then. Let's see. Let me find it. He said he talked to one of the attorneys. Oh, paragraph 8. I gave that list to him and I discussed the case with one of those attorneys. She indicated that my advice was correct and he had no appellate rights he could use. And that's advantages and disadvantages. That's what you're relying on for adequate consultation? That satisfies Flores-Ortega? Well, under the facts of this case, our position is that it does, given the sentence below the low end of the guideline range, the plea, and the appeal waiver. So are you saying that there's no duty to consult if there really wasn't any advantage to appealing? Well, Flores-Ortega says that in looking at a duty to consult, our position first is that there was adequate consultation given the facts of this case. Second, that under Flores-Ortega, you have to look at the totality of the circumstances in determining whether there was a duty to consult. And that given the facts of this case, that Mr. Kramer had no reason to think that Mr. Herring would really want to appeal his case given the plea, appeal waiver, and sentence below what was agreed to in the plea, below the low end of the sentencing guidelines. Well, what if the defendant unreasonably wants to appeal? The counsel and all of us and you and everyone else in the courtroom says, there's no basis for an appeal here. But the defendant says, I want to appeal. Well, that would be a different case. That's not a duty to consult case. I mean, the case law is clear, and the Supreme Court confirmed it in Garza, that if a client tells his attorney that he wants to file an appeal and instructs his attorney to do so, that the attorney has to do so. But that claim has never been made in this case. This case has always been presented as a duty to consult case. So for purposes of this appeal, in the 2255, he claims that he expressed an interest in appealing, but he's never claimed that he specifically instructed his attorney to file an appeal. That seems to be a little bit of a difference in the way your arguments are being presented this morning. Mr. Newland kept saying that Mr. Herring told Mr. Kramer that he wanted to file an appeal, and you're saying he was interested in filing an appeal. I don't know how much daylight there is between those two, but it does seem like there's a little bit of difference in emphasis there. Well, if that were his claim, it would be a different claim. If that were his claim, it would be a claim, it wouldn't be a duty to consult case. And he's always presented this case before the district court in his 2255. Does it go to prejudice, though? Let me ask you this. Assuming that counsel had a duty to consult, and we think he didn't do so, has Mr. Herring demonstrated that he wanted to appeal, and does that establish a presumptive prejudice under the cases? No. Flores-Ortega is clear that expressing an interest in appealing establishes ineffective assistance of counsel, but it is not enough to establish that he would have appealed but for the alleged ineffective assistance. I think there is that passage about interest alone is insufficient. But is it interest alone? That seems to be a difference between you and Mr. Newlin this morning. Are we talking about that he expressed an interest in appeal or that he said, I want to appeal? In his 2255, our position is that he concedes. He never said, I want to appeal. If that were the case, this 2255 and the brief on appeal would have had to be presented differently. If his claim is that he expressly instructed his attorney to file an appeal, then this would not be a failure to consult case. And that's how it was presented. It's how it was presented to the district court.  Let me read you two sentences that both start with we hold in the Flores case. And one says, we instead hold that counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either of two things. The second of which is that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. The second, accordingly, we hold that to show prejudice in these circumstances. A defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed. In other words, it doesn't have to be a certainty that he would have appealed. It just has to be a question, an open question whether he would have appealed. Why isn't that good enough? Well, I believe the court in Flores-Ortega makes it clear that that initial showing, what you quoted first, that establishes ineffective assistance of counsel. And that is not sufficient to establish, as I believe the court says, that he would have appealed but for the ineffective assistance of counsel. That's the first one. And the second one specifically speaks to prejudice. The first? Well, you said the first one speaks to ineffective assistance of counsel. Oh, the first quote, yes. But the court makes clear that the second inquiry, the prejudice inquiry, something more has to be shown than... It's a reasonable probability, and that isn't even a preponderance, that but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed. And so if he comes in and says, I would have timely appealed, and here's a reason to believe that I was talking about appeal, and certainly we know that because trial counsel gave him three names. Well, I'd point to this sentence from Flores-Ortega. To prove deficient performance, a defendant can rely on evidence that he sufficiently demonstrated to counsel his interest in an appeal. But such evidence alone is insufficient to establish that, had the defendant received reasonable advice from his counsel about the appeal, he would have instructed his counsel to file an appeal. And then the court goes on to discuss what sorts of evidence might be sufficient to make that showing, and that is when the court discusses the existence of non-frivolous grounds for appeal. Now, the court says the defendant isn't required to show non-frivolous grounds for appeal, but that is one sort of evidence that can be used to show something more than what is required to simply show the ineffective assistance. What else would show that? Well, perhaps if he had shown that he had contacted one of the other attorneys. There are other things that he perhaps could have shown to establish that he would have appealed but for the ineffective assistance. Do the cases require taking some action as opposed to making a statement? I'm not sure Flores or Ortega discounts that possibility. Well, there are other cases that have addressed this issue. I'm wondering if they provide any guidance on that question. Not that we could find. I don't think that precludes it, but I think what the case law makes clear is that what a defendant has to show to establish ineffective assistance of counsel. We're on prejudice right now. No, I know. But what he has to show to establish ineffective assistance is not enough to establish prejudice. It's something more. What needs to be shown to establish prejudice, then? What you're saying is an interest in appealing is one thing on the ineffective assistance prong, but you need something more on the prejudice prong. What is that something more? Well, that something more could be the existence of non-frivolous grounds for appeal. It could also be taking some action, perhaps contacting, in this particular case, perhaps contacting one of the appellate attorneys on the list he was given. Well, but all he has to show is a reasonable possibility that he wanted to appeal. I'm frankly concerned about one step before that, all still directed to the prejudice prong. But 2255B says the district court should hold a hearing unless it is conclusively established in the record that he's entitled to no relief. So the question I ask myself is when the guy says, I would like to appeal, and the guy sought records that might support his appeal, how can we say that his record conclusively shows he was not wanting to appeal? That is, didn't the court err in failing to have a hearing? How bad could that be? How much disruption of the court schedule could that be just to have a hearing and hear from the guy himself, hear in his own words whether he was going to want to do appeal and let the court make a credibility determination? I mean, that's the way courts decide things. They have witnesses come and testify, and the courts say, I believe you or I don't. Nobody, we had no such hearing here. Did he ask for such a hearing? Was it required that he ask? And why isn't it error not to have had a hearing? Well, the question for the court is whether the district court abused its discretion in denying it without a hearing. I know, but the standard is you do abuse your discretion unless the record conclusively shows that he's not entitled to one. So what is so conclusive about the judgment that he did not want to appeal? It seems to me that's, I mean, his statements are ambiguous on that. Are you asking about the ineffective assistance question or the prejudice or injury? No, no, I am at the moment assuming that his counsel, Mr. Kramer, may have been ineffective by not advising him at least of some of the pros and cons, saying, look, I'm not going to take the appeal, but here's some pros and cons to consider. Assuming that, then I'm going to prejudice, and I'm saying, why didn't the court have a hearing on his intent? You're saying he didn't show his intent, and maybe he didn't, maybe he did, but there's sure some ambiguous statements out there. And 2255B says you've got to have a hearing unless the evidence is conclusive on the issue. So my question is, did he ask for a hearing? Has he waived the right to a hearing? Why do you think his evidence is so conclusive that he didn't want to appeal? Those were a string of questions, but let's start with the first two, which is factual. Did he ask for such a hearing? Why isn't he entitled to one? Well, the district court isn't required to grant a hearing if it believes that the facts conclusively demonstrate. Conclusively, if not he believes, but if in fact the facts prove conclusively that he would not have wanted to appeal. All the discussion I've heard from my two colleagues with you seems to me to fall quite a way short of a conclusive establishment. That he did not want to appeal. So just answer this question. Did he ask for a hearing? He did. All right. And the district court said no. Yes. All right. Is that an issue on appeal? That he didn't get a hearing? I think it is. He was complaining on appeal that he didn't get a hearing, right? Yes. All right. So why isn't that a good claim? Why doesn't he win on that claim? Why don't we remand and say, look, there's things here and there. We can't say it's conclusive that he did not want to appeal. Have a hearing like 2255B says. Hear what he says. Hear him stand up and make a credibility determination for us, Mr. Judge or Ms. Judge. Because the district court assumed that he was credible. And it found that based on the facts he alleged in his 2255 that he didn't establish, if we're just talking about prejudice, that he didn't establish that he would have appealed but for the ineffective assistance of counsel. That's not the question whether he would have appealed or not. The question is, is it conclusive? I mean, it's not enough to say beyond a reason. It's not enough to say probably you wouldn't have appealed or you didn't establish more likely than not or anything else. The question before you get a hearing is whether it was conclusive that you did not want to appeal. Did the district court make that finding? The district court did. Because how could the district court make that finding in light of the statements that we've been hearing discussed today? Because he didn't present any non-frivolous grounds that he would have raised on appeal. He never alleged that he contact that he took any other actions. So you're saying that to have a right to appeal, it is a predicate, a sine qua non, that you show that you had a good claim. No, that's not what I'm saying. No, because that's not what the law is. No, but you do have to show something more than what is required to show ineffective assistance. So you have to show something other than that you expressed an interest in appealing. And Flores Ortega made it clear. You have to show that to prove prejudice. But you don't have to show that to prove a right to a hearing to prove prejudice. Well, but you have to allege facts sufficient to create. I got all the information I think is able to get gleaned out of the record. So thank you. My time has expired. I'm afraid it is. Thank you. Thank you for your argument. We'll give Mr. Newland some extra time. We may like to hear from you on the evidentiary hearing. How much do we owe Mr. Newland? None, Your Honor. Well, no, but she went over, so I think we ought to give him. Okay. You've got three if you want to use it all. Yes, Your Honor. Thank you very much. I think the court has keyed on a clear issue here, is that whether or not the record conclusively shows that there is not a reasonable probability, which is a probability sufficient to undermine the confidence in the outcome of the proceedings, that Mr. Herring would not have taken an appeal. Now, I know that's a double negative, but that's the standard for denying an evidentiary hearing in this case. And as the court has correctly identified, Mr. Herring has statements in his 2255 in the reply, and there's evidence potentially going both ways on this, and the district court should have held an evidentiary hearing. Let me ask you this. I was interested in Ms. Williams' response in saying that the district judge, if the district judge accepted, assumed as correct, everything that Mr. Herring alleged, then what's the point in having an evidentiary hearing at that point? I mean, that happens, for example, on summary judgment. We say, well, even if the facts are disputed, if we accept everything that the non-moving party claims, then we can still go ahead and decide this. Why wouldn't that same principle work here? What's the need for an evidentiary hearing if the court is saying, I'm going to accept everything Mr. Herring said and decide on that basis? Well, I think the court did make that finding. The court was of the opinion that the record conclusively refuted Mr. Herring's claim that there's a reasonable probability that he would have filed an appeal. What we would assert is that that finding was error, Your Honor. And so the need to have an evidentiary hearing. So are you saying that the district court did not accept the facts alleged by Mr. Herring in his 2255? I'm just trying to understand what an evidentiary hearing is going to accomplish if the district court did that. Well, I think first Mr. Herring would have the opportunity to potentially develop additional facts about what he did or did not. Well, shouldn't he have done that in the first place when he filed the 2255? In an ideal world, absolutely, Your Honor. Mr. Herring would have done that. But he set forth the general factual basis for his claims in the 2255, which is required under the pleading standards and is obviously heightened pleading in the post-conviction context. But he would have been able to develop things that are actually related to the same acts and the same claims that he asserted in the 2255 and in the filing. So an evidentiary hearing would have allowed the court to resolve the issue of whether, in fact, for example, Mr. Herring did in fact tell his attorney that he wanted to appeal. These are all things that go to the uncertainty of the record itself, Your Honor. But we would submit that the government's rule, which would require Mr. Herring or any litigant to show non-frivolous claims, has been rejected by the Supreme Court multiple times since Rodriguez through Flores-Otega and through Garza versus Idaho. And with that, we would submit the case for consideration to the court. Thank you very much. Thank you, Your Honor. I'd like to thank counsel for your arguments. The case will be submitted and counsel are excused.